Mr. Justice Olin
delivered the opinion of the court:
This case comes before us upon a bill of exceptions taken to the rulings of Chief-Justice Gartter, who presided at the trial.
The following are all the facts in the case appearing on the trial necessary to be recited to raise the question of law which I think decisive of the case.
It was made to appear that the Baltimore and Potomac Railroad Company had been incorporated by an act of the general assembly of Maryland, and that on the 5th of February, 1867, Congress authorized the extension, construction, and use of a lateral branch into and within the District of *328 Columbia. This act, after prescribing the mode of acquiring the right of way over or through lands in the District, in section three, provides that whenever it becomes necessary for the railroad-track to pass any street or alley, the company shall make a convenient wagon-way, so as not to obstruct public travel, and providing, first, that said railroad shall enter the District at such place, and pass along such public streets and alleys to such point or terminus within said city, as shall be allowed by Congress upon presentation of map and survey of said road ; and further providing that the level of said road within the city shall conform to the present graduation of the streets, unless Congress shall authorize a different level.
Whatever powers or privileges were granted to this railroad company under this act were as wholly independent of the then municipal government of the city of Washington as though no such government existed. The same may be said of the acts of Congress of March 18, 1869, and of March 25, 1870. It will be seen in all of them that the powers and privileges granted by Congress to this railroad corporation were in no way subjected to the control or supervision of the municipal government of the city of Washington, and the power of Congress to exempt this railroad company from all interference with or control over it by the city government of Washington will scarcely be doubted,
On examination of the several acts of Congress in reference to this railroad company, I am at a loss to discover the necessity for or the propriety of the ordinance of the mayor, board of aldermen, and board of common council of the city of Washington of May 30, 1870, recited in the first bill of exceptions. They had nothing whatever to do in the matter. The same power that granted the privileges and rights to the railroad company created the board of aldermen, and it might have refused the one and destroyed the other at its sovereign will and pleasure.
To the introduction of this act of the corporation of Washington as evidence in the case, an objection was taken and the objection overruled. Upon any possible theory of this case, this evidence was, I think, inadmissible; and as we can not know judicially what influence this testimony had in deter *329 mining the verdict of the jury, the verdict, for this cause alone, should be set aside.
But before the plaintiff in this case received the injury of which he complains, the old District government of Washington was abolished, together with all the offices created by it, or existing under it, and nothing was left of the old government save the ordinances passed by it, and those made subject to repeal by the incoming government. This was accomplished by the act of Congress of February 21,1871, entitled “An act to provide a government for the District of Columbia.”
By section first of that act it is provided “ that all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body-corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all the powers of a municipal corporation not inconsistent with the Constitution and the laws of the United States and the provisions of this act.”
This last clause is worthy of observation.
I understand it to mean this: that Congress creates a municipal government for this District, with such powers, and such powers only, as are granted in the act creating that government. Municipal governments, like all other corporations, take such powers only as are expressly granted in the act creating them, or at most, such powers as are necessary to carry into practical effect the powers expressly granted.
The only remaining provision of the act of Congress creating a “ government ” for this District which it seems to me necessary to refer to, is contained in the 37th section.
The provisions of that section are as follows:
“ Sec. 37. And be it further enacted, That there shall be in the District of Columbia a board of public works, to consist of the governor, who shall be president of the board; four persons to be appointed by the President of the United States, by and with the advice and consent of the Senate, one of whom shall be a civil engineer, and the others citizens and residents *330 of the District, having the qualification of an elector therein; one of said board shall be a citizen and resident of Georgetown ; and one of said board shall be a citizen and resident of the county outside of the cities of Washington and Georgetown. They shall hold office for the term of four years, unless sooner removed by the President of the United States. The board of public works shall have entire control of, and malee all regulations which they shall deem necessary for heeping in repair the streets, avenues, alleys, and seioers of the city, and all other works which may be intrusted to their charge by the legislative assembly,” &c.
This is all of this section I deem it important to refer to. It will be seen, therefore, by the provisions of the three several acts of Congress in reference to the Baltimore and Potomac Railroad Company before referred to, that whatever rights, privileges, or immunities were conferred upon it, were wholly independent of the then existing municipal government of Washington.
This railroad company, in constructing its road, as by law it was authorized to do, opened a deep excavation for its-track by the side of a traveled street, and so negligently omitted to put up barriers or safeguards, or lights, that a citizen in the exercise of ordinary care and prudence, as found by the jury, fell into this excavation made by the railroad conrpany, and was seriously injured. He brings.suit— not against the company, which was conceded by counsel on both sides of the case to be liable for the damage sustained if there was any liability in the case — but brings suit against the District government. Under the instruction of the presiding justice a verdict was rendererd by the jury for the plaintiff.
The action, I think, cannot be maintained, because the organic law creating the existing government of this District confers on it no control over the avenues, streets, and alleys, in the District, nor imposes on it any duty to repair or keep them in order; and where no such power is given or duty imposed, it is the grossest of legal solecisms to affirm that an obligation can arise.
But it is argued that it is impossible to conceive of the ex istence of a municipal government that would not have power *331 to open, improve, repair, and regulate the public streets and alleys within its corporate limits. All I have to say in reply is, if the thing really cannot be conceived of by a rational mind, it probably cannot be done; but I must add, that the act of Congress not only says that it can be done, but that it shall be done; and says so in language so plain that he who runs may read: “ The board of public worTcs shall have entire control of the streets,” &c.
After entire control of any subject or matter is given to one person or to a board, what kind of control can be implied, by way of reversion or remainder in the District, to some other person or body! What fraction of the whole control of a given subject is the entire control ?
It is said that the board of public works is a constituent part of the District government as last organized; and, therefore, for any omission of duty by any constituent part of such government, whereby damage has been occasioned to third persons, an action may be maintained by such persons against the District government. This position, 1 think, is rather specious than sound.
It by no means follows that the municipal government of this District is liable in an action at law for damages occasioned by negligence or misconduct of an officer of this District in respect to the duties imposed upon them by law.
The marshal of this District, (who is no unimportant part of its government,) if he neglect to discharge his duty, to the injury of a third party, may be sued, and the damages sustained may be recovered off him; but whoever thought his negligence ever would be cause of action against this municipal governm ent ? The case put is no extreme one. The same may be averred of every officer of the District, from the judge on the bench to the constable or police officer. Statutes in pari materia are to be construed as one statute; it is therefore of no importance whatever that the board of public works was created by the same act of Congress which created the existing municipal government of the District.
It is argued, thirdly, that it would be a great hardship if a person injured as the plaintiff was could not maintain an action for the damage he received against the District of Columbia.
*332 I have before remarked that it was conceded on the argument that the primary liability in this case, if liability there was, was on the part of the Baltimore and Potomac Eailroad Company, and this upon the principle, sic utere tuo ut alienum non leñas, so exercise your own rights as not to unnecessarily injure others. The plaintiff, then, having a clear right to maintain an action against the Baltimore and Potomac Eailroad Company, it would seem to be no hardship that he was unable to maintain an action against some other person or corporation. .
It sometimes happens, most frequently in actions of tort, that a person injured may have two remedies, or, more properly, a remedy against different persons, upon the principle of respondeat superior; but that principle has no application to the present case. The Baltimore and Potomac Eailroad Company was not the servant or agent in any sense of the municipal government of this District; and I have before shown, I think, that the District had no authority or power conferred upon it over the streets of the city. Indeed, any interference with thestreets, &c., on the part of the officers, servants, or agents of the District against the will or consent of the board of public works would be a trespass. The members of the board are appointed on the nomination of the President, confirmed by the Senate, paid by the United States; and being thus appointed, to them is committed the control and repair of the streets. It would be as much a trespass to interfere with their prescribed duties as with those of any other agents of the United States.
It was held by this court, after protracted argument, that the board of public works, created by the organic act establishing the existing municipal government of this District, was a 'quasi corporation, and as such might maintain a suit at law or in equity when the discharge of the duties imposed upon it was wrongfully interfered with. In that decision I concurred, and see no reason why we should reverse it. . It would seem to follow, as a logical and legal sequence from that decision, that the board of public works would be liable to an action, if, by their neglect to perform a clear duty imposed by law, they occasioned special damage to some innocent person. I conclude, then, that if there was any *333 remedy for the plaintiff beyond the liability of the railroad company, it was against the board of public works. But it is said that the board of public works have no fund out of which to satisfy any judgment which may be recovered against it. This, it seems to me, is no better reason than to say no man should be sued for an assault and battery who has no means to pay any judgment which may be recovered against him. The failure of a public officer to perform a duty imposed on him by law to the special injury of any 'person, is a good cause of action, but the damages awarded for such cause are to be paid out of the officer’s private funds, and not out of any public funds under his control or elsewhere. This board was charged by law with the entire and exclusive control of the streets. If they neglected their duty and omitted to keep them in safe repair, perhaps they may be liable to suit; but upon this subject it is quite unnecessary, and therefore I express no opinion.
If the present action can be maintained, the tax-paying population of this District must pay the amount of the judgment. What offense, what neglect of duty have they been guilty of? A government is imposed upon them, in respect to which they have little or no voice at all, and in respect to the streets of the city absolutely none. But it is proposed to hold the tax-paying population of the District responsible for the negligence of this railroad corporation, created by Congress, or the negligence of the board of public works, created in the same way, and over neither of which the people of this District have any more control than the people of any neighboring State. I can readily perceive, upon grounds of public policy, that a municipality which elects or appoints its own agents, officers, or servants, may be held responsible for their misfeasance or malfeasance, and be made to sweat out by taxation all judgments recovered against such officers, servants, or agents for failing in any respect to perform their duty; but such a rule in this case would run the doctrine of imputed sm so far into the ground that I am unwilling to follow it. The President and Senate would be made responsible upon this rule.
I have not deemed it important to refer to adjudicated cases to sustain any principle I have announced. Those *334 principles are so elementary in their character that the citation of cases might impair, but could not strengthen them. They will be found in Dillon on Municipal Corporations, a most able and instructive book,'remarkable for its admirable arrangement and lucid examination of adjudicated cases, and in Shearman & Beclfield on Negligence. No adjudicated case can be found, I think, where it has been held that a municipal corporation has been held responsible for the non-repair of streets, where the power to repair was not given, or the duty to repair imposed, or where the streets were in the charge of independent officers, over whom a municipal body has no control, either as respects their appointment or essential duties. Other considerations might be presented, but I do not deem it necessary to add more.
A new trial must be granted.